BENDIX PAPER CO. *v.* UNITED STATES (No. 1890).[1]

SURFACE-COATED PAPER.

 Paper known as "Perlmutter" paper, one surface of which has not been treated, the other having been treated with a layer of gelatin and then a layer of lacquer, presenting a shiny, glossy and variegated appearance, is not classifiable under paragraph 324, tariff act of 1913, as "Papers, wholly or partly covered with gelatin or flock, papers with white coated surface or surfaces." The decision of the Board of General Appraisers sustaining its assessment under the paragraph as a surface-coated paper not specially provided for, is affirmed.

United States Court of Customs Appeals, April 30, 1918.

APPEAL from Board of United States General Appraisers. G. A. 8132 (T. D. 37512).

[Affirmed.]

*Comstock & Washburn* (*Albert H. Washburn* and *George J. Puckhafer* of counsel) for appellants.

*Bert Hanson,* Assistant Attorney General (*Martin T. Baldwin* and *Frank P. Wilson,* special attorneys, of counsel), for the United States.

[Oral argument Apr. 20, 1918, by Mr. Washburn and Mr. Baldwin.]

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

BARBER, Judge, delivered the opinion of the court:

The application of paragraph 324 of the tariff act of 1913 to the importations here is the only question involved.

It provides among other things as follows: (1) For "papers wholly or partly covered with metal leaf or with gelatin or flock, papers with white-coated surface or surfaces," a duty of 25 per cent ad valorem; (2) for "papers with coated surface or surfaces suitable for covering boxes, not specially provided for," 40 per cent ad valorem; and (3) for "all other paper with coated surface or surfaces not specially provided for in this section; uncoated papers, gummed, or with the surface or surfaces wholly or partly decorated or covered with a design, fancy effect, pattern, or character," a duty of 35 per cent ad valorem.

The merchandise here is a surface-coated paper, known as "Perlmutter" paper. It was assessed for duty under subdivision (3) of paragraph 324 and is claimed dutiable under subdivision (1) thereof, as having a surface wholly or partly covered with gelatin. The Board of General Appraisers sustained the assessment.

The official exhibit is a small piece of paper, one surface of which is not coated, while the other is coated or covered with something

---

[1] T. D. 37626 (34 Treas. Dec., 403).

which presents a shiny, glossy, and variegated appearance. No evidence was offered by either party at the hearing before the board other than the appraiser's report, the relevant parts of which we quote:

The merchandise in question consists of so-called Perlmutter paper, which was formerly returned for duty by this office as gelatin-covered paper at 25 per cent ad valorem under paragraph 324 * * *. Based on a report made by the United States chemist attached to this office that one surface of the merchandise is paper and that the other surface is coated with a lacquer composed of a formaldehyde condensation product, and that between these two surfaces is a layer of gelatin, the practice of this office was changed, and the merchandise in question returned for duty as a surface-coated paper, n. s. p. f., at 35 per cent ad valorem * * *..

This report was offered in evidence by importer.

The substance of the importer's argument here is that, assuming the paper to be as stated in the appraiser's report, it is wholly or partly covered with gelatin and so specifically provided for under subdivision (1) of the paragraph. Stated in another form, it is that the addition of the lacquer to a paper covered with gelatin does not transform that paper into one not covered with gelatin.

The collector's assessment raises the presumption that one surface of the paper is covered or coated with a lacquer, and the burden is upon the importer to show that it is not so covered or coated but is in fact covered in whole or in part with gelatin.

We think the importer has failed to discharge this burden. It is argued and the board at least inferentially found that the lacquer was transparent although the evidence is not to that effect. It may or may not be transparent, so far as we know, but whether so or not that can not affect the result, for the fact is that the coating or covering upon the surface in question is lacquer and is not gelatin. The appraiser's report describes the merchandise as having one surface of paper and the other of lacquer, *between which* is a layer of gelatin. The relative thickness of the gelatin layer to the lacquer or the function of the latter does not appear, but the lacquer in fact constitutes the covering or coating of one surface of the merchandise, which as a whole is assumed to be *paper*.

The quoted language of the paragraph clearly refers to the surface or surfaces of the merchandise as imported and not to any coating or covering which may first have been applied to the paper provided there has been to such coating or covering another substance applied which entirely coats or covers it, as in this case. In this connection see Kupfer Bros. *v.* United States (2 Ct. Cust. Appls., 302; T. D. 32041) and Knauth, Nachod & Kuhne et al. *v.* United States (4 Ct. Cust. Appls., 11; T. D. 33199).

Upon this record we see no reason why the judgment of the Board of General Appraisers ought not to be, and therefore it is *affirmed*.